UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JON SHIRLEY, *et al*, § § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:12-CV-1155 |
| § | |
| ERIC COUFAL DIAZ GARZA, *et al*, § § | |
| Defendants. § | |

## OPINION AND ORDER

Two motions are pending before the Court: (1) the Motion for Summary Judgment or, in the Alternative, Motion to Expunge Notice of Lis Pendens (Doc. 43) filed by Intervenor Elbar Investments Inc. ("Elbar") against Jon Shirley ("Shirley") and Amigo Adventures, LLC ("Amigo") (collectively, with Shirley, "Plaintiffs"); and (2) the Motion to Deposit Funds into Registry of the Court and for Discharge of Stakeholder (Doc. 63) filed by Intervenor Thomas G. Overbeck ("Overbeck").

Having considered the motions, the record in this case, and the applicable law, the Court concludes that the motions should be granted.

### I. Background

On April 17, 2012, Plaintiffs filed their Complaint (Doc. 1) against Eric Coufal Diaz Garza ("Coufal," or "Eric Coufal"); Coufal's mother, Estela Diaz Garza Coufal ("Diaz Garza"); a Panamanian corporation owned by Coufal, Ajijic Investments, SA ("Ajijic"); and a Mexican corporation owned by Coufal, Serajin S.A. de C.V. ("Serajin").[1] Plaintiffs sought two remedies: first, a declaratory judgment that Coufal is the true and beneficial owner of the condominium

---

[1] On May 31, 2013, Plaintiffs filed their First Amended Corrected Complaint (Doc. 61), stating the same factual allegations and seeking the same remedies as in the original Complaint.

unit located at 121 North Post Oak Lane, #1301, Houston, Texas 77024 (the "Condominium"), and that it was purchased with funds fraudulently obtained from Shirley; second, the imposition of a constructive trust on the Condominium in favor of Shirley. (Doc. 61 ¶¶ 39-40, 46). Pursuant to this proceeding, Plaintiffs also filed a Notice of Lis Pendens (Doc. 43-1 Ex. F) on the Condominium. Additionally, this case involves two intervenors: Overbeck, who, as substitute trustee, sold the Condominium at foreclosure on June 5, 2012, (Compl. in Intervention for Interpleader of Funds ¶¶ 12-13, Doc. 20); and Elbar, who purchased the Condominium, (Compl. in Intervention ¶ 11, Doc. 18). Overbeck seeks only to deposit the $411,081.55 balance remaining from the foreclosure sale into the registry of the Court and to be dismissed from this suit. (Doc. 20 ¶¶ 15, 20). Elbar seeks to expunge the Notice of Lis Pendens. (Doc. 18 ¶¶ 15-17).

The origin of the parties' dispute can be found in an earlier action brought before Judge Nancy F. Atlas, *Shirley v. Garza*, No. 4:10-CV-4901. In that case, Shirley and Amigo stated causes of action against Coufal for fraud and for breach of fiduciary duty. Compl. ¶¶ 62-79, *Shirley*, No. 4:10-CV-4901 (Dec. 8, 2010). When Coufal failed to appear, Judge Atlas entered a judgment of default against Coufal in the amount of $1,000,281.79, including the $886,842.96 in payments he had obtained through his fraud and breach of fiduciary duty. Order at 3-4, *Shirley*, No. 4:10-CV-4901 (June 9, 2011). After judgment was entered, Shirley, through his attorney, attempted to identify Coufal's assets in the United States. (Murphy Decl. ¶ 4, Doc. 47). During that process, he discovered evidence supporting a finding that Serajin and Ajijic are both alter egos of Coufal, (Doc. 61 ¶¶ 27-32), and that Coufal used funds from Serajin and Ajijic to make a down payment and pay ownership costs on the Condominium, (Doc. 61 ¶¶ 24-25). Of special significance to this dispute is Shirley's claim that, as part of the original fraud scheme, Coufal directed Shirley to wire the $886,842.96 in payments to an Ajijic account, and that, after

December 2008, the Ajijic account was the sole source used to "pa[y] for all ownership costs and other expenses related to the Condominium." (Doc. 61 ¶ 36). In other words, according to Shirley, "all payments made after December 2008 for the Condominium can be traced back to the funds Shirley deposited in the Ajijic account as a result of Coufal's fraud." (Doc. 61 ¶ 36). Accordingly, Shirley filed this action and the associated Notice of Lis Pendens, seeking a declaration that "Plaintiffs are the owners of any purchases or investments made with Plaintiffs' funds," (Doc. 61 ¶ 40), and "the imposition of a constructive trust on the Condominium on behalf of Shirley," (Doc. 61 ¶ 42).

The relevant history of the title to the Condominium is as follows: On or about December 8, 2003, Estela Coufal, believed to be the same individual as Defendant Estela Diaz Garza Coufal, executed a Note (Doc. 47-6) payable to Thomas A. Oreck ("Oreck") for the purchase of the Condominium. The $698,401.45 down payment came from a Serajin account allegedly controlled by Eric Coufal, (Escrow Receipt, Doc. 47-5), and the remaining $249,000.00 was financed through the Note and secured by the Deed of Trust (the "Deed") (Doc. 43-1 Ex. B). The Note was also secured by a Guaranty Agreement executed by Coufal. (Assignment of Note and Liens at 14, Doc. 43-1 Ex. C; Assignment of Note and Liens at 19, Doc. 43-1 Ex. D). Under the Deed, Diaz Garza conveyed the Condominium in trust to Marc Grossberg, as trustee with the power of sale, for the benefit of Oreck and his successors and assigns. (Doc. 43-1 Ex. B at 4). On February 7, 2012, the Note and Deed were assigned to International Recruitment GP, LLC, (Doc. 43-1 Ex. C), and, on March 6, 2012, assigned to EAP Investments, LLC, (Doc. 43-1 Ex. D). On April 5, 2012, after Diaz Garza defaulted in payment of the Note and, upon notice of the default and intent to accelerate, failed to cure such default, Overbeck was appointed as Substitute Trustee. (Appointment of Substitute Trustee, Doc. 43-1 Ex. E). Overbeck asserts that, in

accordance with the Deed and state law, he posted and mailed a notice of foreclosure and, on June 5, 2012, conducted a foreclosure sale of the Condominium to Elbar, the highest bidder, for $525,100.00. (Doc. 63 ¶ 4; Foreclosure Sale Deed, Doc. 43-1 Ex. H). Overbeck further states that, after disposition of the foreclosure sale proceeds, there remained a surplus of $411,081.55, which is currently being held in his law firm's Interest on Lawyers' Trust Account ("IOLTA"). (Overbeck Decl. ¶ 6, Doc. 66-1). On August 9, 2012, Overbeck filed his Complaint in Intervention for Interpleader of Funds and, on July 25, 2013, filed his Motion to Deposit Funds into Registry of the Court and for Discharge of Stakeholder.

Plaintiffs, however, argue against the validity of the foreclosure sale and claim that they maintain property rights in the Condominium, as recorded in their Notice of Lis Pendens, which was filed prior to the foreclosure sale to Elbar. (Resp. to Mot. Summ J. at 6, Doc. 46). In answer to Overbeck's Complaint in Intervention, Plaintiffs state a counterclaim against Overbeck to void the foreclosure sale, (Answer at 3-5, Doc. 28), and, in answer to Elbar's Complaint in Intervention, Plaintiffs state a counterclaim against Elbar to quiet title in the Condominium, (Answer at 4-5, Doc. 27). Elbar, in its Motion for Summary Judgment, makes the opposite arguments: that the foreclosure sale was valid and that Plaintiffs have no interest in the Condominium. (Doc. 43 at 4-11).

## II.   Discussion

### A.   *Motion for Summary Judgment*

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute is genuine if the evidence presents an

issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if, according to the substantive law governing the claims, it is determinative of an element essential to the outcome of the case. *Id.* at 248.

In this case, the disagreements between Plaintiffs and Elbar boil down to one essential issue: the validity of the lis pendens. Under the relevant Texas statute, a court must expunge the notice of lis pendens if it determines either that "(1) the pleading on which the notice is based does not contain a real property claim" or that "(2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim." Tex. Prop. Code § 12.0071(c). The rule regarding real property claims under this statute is that "[i]f the suit seeks a property interest only to secure the recovery of damages or other relief that the plaintiff may be awarded, the interest is merely collateral and will not support a lis pendens." *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 4 (Tex. App. 2007) (citing *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995)). In other words, in order to support a lis pendens, "the property against which the lis pendens is filed must be the subject matter of the underlying lawsuit." *In re Cohen*, 340 S.W.3d 889, 892 (Tex. App. 2011) (internal quotation marks omitted). If, on the other hand, the plaintiff seeks a property interest only to satisfy an award of damages, then the suit is not one involving " '(1) title to real property, (2) the establishment of an interest in real property, or (3) the enforcement of an encumbrance against real property' as required by section 12.007 to render a notice of lis pendens proper." *Id.* (quoting *Flores*, 915 S.W.2d at 478). Where, as here, the plaintiff seeks the imposition of a constructive trust on real property, this distinction between "collateral" and "direct" interests is determined according to the relationship between the underlying allegations and the desired remedy:

> Typically, in a conversion suit, the claimant alleges that the proceeds of the converted property were used to purchase real estate and then seeks a constructive trust on that real property. In these cases, the courts have found that imposing a constructive trust on the real estate to satisfy the judgment against the adversary is asserting only a collateral interest in the real property and that a lis pendens is improper. In contrast, where the constructive trust is sought to restore to the aggrieved party the actual property that was misappropriated, the action is seeking to establish an interest in the property itself, so that a lis pendens is appropriate.

*Countrywide*, 240 S.W.3d at 6 (citations omitted). Thus, a distinction can be made between actions seeking to *restore* an interest in real property, which will support a lis pendens, and actions to *gain* such an interest, which will not.

The facts on this matter are undisputed. The underlying causes of action are for fraud and breach of fiduciary duty, and Plaintiffs' claimed interest in the Condominium did not arise until after default judgment was entered against Coufal. After such judgment, Plaintiffs attempted to identify Coufal's assets and discovered that he had used funds fraudulently obtained from Plaintiffs to pay ownership costs on the Condominium. Plainly, then, this suit is not an attempt to restore real property that was misappropriated, but an attempt to recover damages. An analogous case is *Moss v. Tennant*, in which the plaintiff alleged fraud, traced the proceeds obtained through that fraud to a specific property, filed a notice of lis pendens, and sought to impose a constructive trust on the property "to the extent it was purchased with the proceeds." 722 S.W.2d 762, 763 (Tex. App. 1986) (internal quotation marks omitted). In that case, the court found that the plaintiff did "not seek recovery to the title to relator's property [or] to establish an interest in the home except as security for the recovery of … damages … on his fraud allegation and only to the extent he [could] trace the proceeds" to the property. *Id.* Therefore, the court held that the plaintiff's claim was "essentially a prayer for a judgment lien, affect[ed] the property only collaterally, and [did] not come within the provisions of § 12.007," and voided the lis pendens. *Id.* Likewise, in this case, the uncontroverted evidence shows that Shirley and Amigo have failed

to establish the existence or probable validity of a real property claim; accordingly, the Notice of Lis Pendens is improper and must be expunged.

Additionally, absent an interest in the Condominium, Plaintiffs have no standing to challenge the validity of its sale at foreclosure. *Cf. Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) ("[W]hen [a] third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale."). Therefore, Plaintiffs' counterclaims against both Elbar and Overbeck fail as a matter of law.

### B.     *Motion to Deposit Funds into Registry of the Court*

Overbeck seeks to deposit the $411,081.55 remaining from the foreclosure sale into the registry of the Court and be dismissed from this suit. As the only objections to his motion were based on Plaintiffs' claim to ownership of the Condominium and counterclaim to void the foreclosure sale, (*see* Elbar's Resp. to Mot. Deposit Funds ¶¶ 15-16, Doc. 64; Pls.' Resp. to Mot. Deposit Funds ¶ 2, Doc. 65), which do not survive this Order, Overbeck's motion should be granted.

### III.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Elbar Investments Inc.'s Motion for Summary Judgment or, in the Alternative, Motion to Expunge Notice of Lis Pendens (Doc. 43) is **GRANTED**. Elbar is **DISMISSED** from this action, and the Notice of Lis Pendens is hereby **EXPUNGED**. It is further

**ORDERED** that Thomas G. Overbeck's Motion to Deposit Funds into Registry of the Court and for Discharge of Stakeholder (Doc. 63) is **GRANTED**. Overbeck shall deposit

$411,081.55 into the registry of the Court within fourteen (14) days of entry of this Order and, upon such deposit, shall be **DISMISSED** from this action.

SIGNED at Houston, Texas, this 5th day of September, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE